violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") for various willful and unlawful employment policies, patterns, and/or practices.

2. Defendants operate a courier company that primarily provides courier services through all five boroughs of New York City and Long Island area. Defendants store packages, parcels, and items at their warehouse(s), and the main services provided by their courier business are sorting the packages based on their destinations and delivering them to the recipients' addresses. Defendants paid Plaintiffs and other similarly situated courier workers under a similar, if not identical, compensation structure. Specifically, Defendants paid Plaintiffs and other similarly situated courier workers a minimal fixed amount per completed delivery and required them to work extremely long shifts, regularly incurring a high number of overtime hours each workweek.

3. Defendants classified Plaintiffs and other similarly situated employees and former employees as non-exempt employees under the FLSA.

4. Plaintiffs and other similarly situated employees and former employees who work or worked as courier workers all performed manual labor for Defendants.

5. Plaintiffs, along with other similarly situated former courier workers, were broadly employed as "courier workers," and were assigned various tasks at the discretion of Defendants to accomplish duties as Defendants deemed appropriate from day to day and were supervised by Defendants. Generally, they served the Defendants' customers by loading packages/parcels/items onto their own vehicles and then delivering the packages/parcels/items to their designated recipients.

6. This lawsuit is a collective action brought under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and supporting New York State Department of Labor Regulations that seeks to recover overtime wages, spread of hours premium, and all

2

unpaid wages that Defendants improperly withheld from Plaintiffs, and damages for Defendants' failure to provide Plaintiffs with Wage Theft Protection Act ("WTPA") statements and notices.

7.    Defendants have deprived Plaintiffs and other similarly situated current and former employees of overtime compensation in violation of the FLSA, 29 U.S.C. § 201, *et seq*.

8.    Defendants have deprived Plaintiffs and other similarly situated current and former employees of overtime wages, spread of hours premium, and the wages that they were entitled to receive but did not receive in violation of the NYLL.

9.    Plaintiffs bring additional claims for Defendants' retaliatory conduct in violation of the NYLL.

10.    Plaintiffs allege that, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 et seq. ("FLSA"), they are entitled to recover from Defendants: (a) unpaid overtime wages, (b) liquidated damages, (c) prejudgment and post-judgment interest, and attorneys' fees and costs.

11.    Plaintiff further alleges that, pursuant to the New York Labor Law, he is entitled to recover from Defendants: (a) unpaid overtime compensation, (b) unpaid "spread of hours" premium for each day their work shifts exceeded ten (10) hours, (c) liquidated and statutory damages pursuant to the New York Labor Law and the New York State Wage Theft Prevention Act, (d) prejudgment and post-judgment interest, and (e) attorneys' fees and costs.

## JURISDICTION AND VENUE

12.    This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

3

13. Upon information and belief based on information provided by Plaintiffs, who are employees or were employees of Defendants. Defendants are enterprises whose gross volume of sales made, or business done, is in excess of $500,000. Upon information and belief, based on information provided by Plaintiffs, Defendants maintains multiple warehouses throughout the U.S. and regularly receives out-of-state or even out-of-country customers' parcels and packages and provides delivery services.

14. Specifically, Defendants advertise on their website that SpeedX *"servicing over 11,000 zip codes across the U.S. and Canada, covering densely populated cities with a reach of 175m customers worldwide."* As such, based on Plaintiffs' personal knowledge of Defendants' business, as well as upon information and belief, Defendants are an enterprise engaged in commerce as defined by 29 U.S.C. § 203(s). Defendants' website can be accessed at the following URL: https://speedx.io/.

15. Upon information and belief as well as first-hand knowledge of Plaintiffs, Defendants regularly purchase goods and materials in interstate commerce and Plaintiffs regularly handle such goods. Specifically, Defendants advertise on their website that SpeedX *"[a]s a quickly-growing enterprise covering 11,000+ zip codes, our customers have millions of packages to deliver"* and *"servicing over 11,000 zip codes across the U.S. and Canada, covering densely populated cities with a reach of 175m customers worldwide."*

16. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintained their corporate headquarters, offices, and warehouses within this district, and Defendants operate their business within this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

### *Plaintiff Litao Zhou ("Plaintiff Zhou")*

17.     Plaintiff Zhou is an adult individual residing in Queens County, New York.

18.     Plaintiff Zhou was employed by Defendants as a courier worker from around June 2023 to September 2023, and then again from February 2, 2024, until October 24, 2024.

19.     The consent to sue form for the Plaintiff Zhou is attached hereto as **Exhibit A.**

### *Plaintiff Yun Chi ("Plaintiff Chi")*

20.     Plaintiff Chi is an adult individual residing in Queens County, New York.

21.     Plaintiff Chi was employed by Defendants as a courier worker from around February 2024 to October 2024.

22.     The consent to sue form for the Plaintiff Chi is attached hereto as **Exhibit A.**

### *Plaintiff Weishan Wu ("Plaintiff Wu")*

23.     Plaintiff Wu is an adult individual residing in Kings County, New York.

24.     Plaintiff Wu was employed by Defendants as a courier worker from around September 2023 to January 2025.

25.     The consent to sue form for the Plaintiff Wu is attached hereto as **Exhibit A.**

### *Defendants*

### *Defendant D&C EXPRESS SERVICE INC d/b/a SPEEDX*

26.     The Corporate Defendant D&C EXPRESS SERVICE INC d/b/a SPEEDX is a domestic business corporation and exists under the laws of the State of New York with a Service of Process address at 24 Homestead Lane #201, Monsey, NY 10952, according to the New York State Department of State Division of Corporations' publicly available record.

5

27.    Upon information and belief, D&C EXPRESS SERVICE INC operates a courier company that provides delivery services to shippers and retailers by collecting, sorting, and delivering packages/parcels/items to their respective designated recipients.

28.    Upon information and belief, D&C EXPRESS SERVICE INC maintains or maintained several warehouses located at:

      a.  4700 Northern Blvd, Long Island City, NY 11101 ("former NY Warehouse");

      b.  18454 149th Ave Springfield Gardens, NY 11413 ("current NY Warehouse").

29.    Upon information and belief, D&C EXPRESS SERVICE INC also maintains an office at 14703 182nd St, Springfield Gardens, NY 11413-4028.

30.    Upon information and belief, D&C EXPRESS SERVICE INC was incorporated on November 2, 2015, doing business as "SPEEDX" according to the New York State Department of State Division of Corporations' publicly available record.

31.    Upon information and belief, D&C EXPRESS SERVICE INC is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and it has each had annual gross volume sales of not less than $500,000.

32.    D&C EXPRESS SERVICE INC is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as courier service company with a New York warehouse located at 4700 Northern Blvd, Long Island City, NY 11101; other business sites includes a

6

warehouse located at 18454 149th Ave Springfield Gardens, NY 11413, and an office located at 14703 182nd St, Springfield Gardens, NY 11413-4028.

***Defendant SPEED XPRESS INC***

33.    The Corporate Defendant SPEED XPRESS INC is a domestic business corporation and exists under the laws of the State of New York with a Service of Process address at 32 Windemere Way, Woodbury, NY 11797, according to the New York State Department of State Division of Corporations' publicly available record.

34.    Upon information and belief, SPEED XPRESS INC operates a courier company that provides delivery services to shippers and retailers by collecting, sorting, and delivering packages/parcels/items to their respective designated recipients.

35.    Upon information and belief, SPEED XPRESS INC maintained or maintains several warehouses located at:

    a.    4700 Northern Blvd, Long Island City, NY 11101 ("former NY Warehouse");

    b.    18454 149th Ave Springfield Gardens, NY 11413 ("current NY Warehouse").

36.    Upon information and belief, SPEED XPRESS INC also maintains an office/headquarter at 14703 182nd St, Springfield Gardens, NY 11413-4028.

37.    Upon information and belief, SPEED XPRESS INC was incorporated on April 26, 2021, according to the New York State Department of State Division of Corporations' publicly available record.

38.    Upon information and belief, SPEED XPRESS INC is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for

7

interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and it has each had annual gross volume sales of not less than $500,000.

39. SPEED XPRESS INC is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as courier service company with a NY Warehouse located at 4700 Northern Blvd, Long Island City, NY 11101; other business sites includes a warehouse located at 18454 149th Ave Springfield Gardens, NY 11413, and an office located at 14703 182nd St, Springfield Gardens, NY 11413-4028.

***Defendant MAVERICK GROUP HOLDING LLC (or "Maverick Group LLC")***

40. The Corporate Defendant MAVERICK GROUP HOLDING LLC is a domestic business corporation and exists under the laws of the State of Maryland with its registered principal office at 2946 St Helen Cir, Silver Spring, MD 20906.

41. On multiple paychecks received by Plaintiff Zhou for his work performed for the SpeedX enterprise, MAVERICK GROUP HOLDING LLC, with an address of 2946 St Helen Cir, Silver Spring, MD 20906, appears on the check as the issuer/payor of the checks.

42. Upon information and belief, MAVERICK GROUP HOLDING LLC operates a courier company that provides delivery services to shippers and retailers by collecting parcels and delivering parcels to their respective designated recipients.

43. Upon information and belief, as part of the SpeedX enterprise, MAVERICK GROUP HOLDING LLC maintains several warehouses located at:

    a. 4700 Northern Blvd, Long Island City, NY 11101 ("former NY Warehouse");

    b. 18454 149th Ave Springfield Gardens, NY 11413 ("current NY Warehouse").

8

44. Upon information and belief, MAVERICK GROUP HOLDING LLC also maintains an office/headquarter at 14703 182nd St, Springfield Gardens, NY 11413-4028.

45. Upon information and belief, MAVERICK GROUP HOLDING LLC was incorporated on February 3, 2022, according to the Maryland Department of State Business Entity search via https://egov.maryland.gov/BusinessExpress/EntitySearch/Business.

46. Upon information and belief, MAVERICK GROUP HOLDING LLC is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and it has each had annual gross volume sales of not less than $500,000.

47. MAVERICK GROUP HOLDING LLC is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as courier service company with a NY Warehouse located at 4700 Northern Blvd, Long Island City, NY 11101; other business sites includes a warehouse located at 18454 149th Ave Springfield Gardens, NY 11413, and an office located at 14703 182nd St, Springfield Gardens, NY 11413-4028.

### Defendant YBB Technology Inc

48. The Corporate Defendant YBB Technology Inc is a domestic business corporation and exists under the laws of the State of New Jersey with its registered address at 36 Cobble Ln, Basking Ridge, NJ 07920-3731.

9

49.     On multiple paychecks received by Plaintiff Zhou for his work performed for the SpeedX enterprise, YBB Technology Inc, with an address of 36 Cobble Ln, Basking Ridge, NJ 07920, appears on the check as the issuer/payor of the checks.

50.     Upon information and belief, YBB Technology Inc operates a courier company that provides delivery services to shippers and retailers by collecting parcels and delivering parcels to their respective designated recipients.

51.     Upon information and belief, as part of the SpeedX enterprise, YBB Technology Inc maintains several warehouses located at:

c.  4700 Northern Blvd, Long Island City, NY 11101 ("former NY Warehouse");

d.  18454 149th Ave Springfield Gardens, NY 11413 ("current NY Warehouse").

52.     Upon information and belief, YBB Technology Inc also maintains an office/headquarter at 14703 182nd St, Springfield Gardens, NY 11413-4028. Upon information and belief, YBB Technology Inc was incorporated on March 7, 2016, according to the records of NJ Department of the Treasury Division of Revenue & Enterprise Services can be accessed at https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName.

53.     Upon information and belief, YBB Technology Inc is at present and has been at all times relevant to the allegations in this Complaint been an enterprise engaged in interstate commerce within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203(b) in that it has and has had employees engaged in interstate commerce or in production of goods for interstate commerce as well as handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce by any person; and it has each had annual gross volume sales of not less than $500,000.

10

54.     YBB Technology Inc is an "employer" within the meaning of the FLSA 29 U.S.C § 203 (d) and the New York State Labor Law ("NYLL") § 2, 190, and/or 651 that runs and profits from a business operation as courier service company with a NY Warehouse located at 4700 Northern Blvd, Long Island City, NY 11101; other business sites includes a warehouse located at 18454 149th Ave Springfield Gardens, NY 11413, and an office located at 14703 182nd St, Springfield Gardens, NY 11413-4028.

***Defendants acted as a single employer in general and a joint employer, the Corporate Defendants functioned as a single integrated enterprise***

55.     At all times relevant hereto, Defendants acted as a single employer in general and a joint employer with respect to Plaintiffs, as Defendants held out Plaintiffs as employees of D&C EXPRESS SERVICE INC a/b/a SPEEDX, MAVERICK GROUP HOLDING LLC, and YBB TECHNOLOGY INC.

56.     Corporate Defendants employed the same employees, including Plaintiffs, performed work on the same job sites, and were all responsible for issuing Plaintiffs their wages.

57.     The Corporate Defendants functioned as a single integrated enterprise during Plaintiffs' employment by Defendants.

***Defendant "Jane" (first name unknown) Ye ("Defendant Ye")***

58.     Upon information and belief, Defendant "Jane" Ye (hereafter, "Defendant Ye") is an individual who has been the de facto and de jure owner, officer and/or agent of Corporate Defendants during the relevant time period. Defendant Ye has possessed and exercised operational control over Corporate Defendants. For example, Defendant Ye has at times determined the wages and compensation of Defendants' employees, including Plaintiffs, and established the schedules of the employees, had the authority to hire and fire employees, supervised the employees and made

11

wage payments to the employees. Defendant Ye required and instructed Plaintiffs and similarly situated employees to use a mobile App "SpeedX" to track the delivery status of the parcels/packages/items, to be notified of the assigned route, and to supervise Plaintiffs' work. Defendant Ye also has a prominent role in the setting of salaries for Defendants' employees.

59.    Upon information and belief, Defendant Ye has ownership interest in the Corporate Defendants, and she was/is the general supervisor of all employees of Defendants.

60.    Upon information and belief, Defendants' employees, including Plaintiffs, called Defendant Ye as "boss Ye" at the worksites during their employment with Defendants. Defendant Ye is known to all Plaintiffs to be their direct "boss" and exercised direct supervisory authority over Plaintiffs, together with Defendant Jia.

61.    Upon information and belief, Defendant Ye manages all aspects of the Corporate Defendants' finances including handling its employees' payroll.

***Defendant "John" (first name unknown) Jia ("Defendant Jia")***

62.    Upon information and belief, Defendant "John" Jia (hereafter, "Defendant Jia") is an individual who has been the de facto and de jure owner, officer and/or agent of Corporate Defendants during the relevant time period. Defendant Jia has possessed and exercised operational control over Corporate Defendants. For example, Defendant Jia has at times determined the wages and compensation of Defendants' employees, including Plaintiffs, established the schedules of the employees, had the authority to hire and fire employees, supervised the employees and made wage payments to the employees. Defendant Jia required and instructed Plaintiffs and similarly situated employees to use a mobile App "SpeedX" to track the delivery status of the parcels/packages/items, to be notified of the assigned route, and to supervise Plaintiffs' work. Defendant Jia also has a prominent role in the setting of salaries for Defendants' employees.

12

63.     Upon information and belief, Defendant Jia has ownership interest in the Corporate Defendants, and he was/is the general supervisor of all employees of Defendants.

64.     Upon information and belief, Defendants' employees, including Plaintiffs, called Defendant Jia as "boss Jia" at the worksites during their employment with Defendants. Defendant Jia is known to all Plaintiffs to be their direct "boss" and exercised direct supervisory authority over Plaintiffs, together with Defendant "Jane" Ye.

65.     Upon information and belief, Defendant Jia manages all aspects of the Corporate Defendants' finances including handling its employees' payroll.

***Defendant Chris Zheng – CEO of "SpeedX" enterprise***

66.     Upon information and belief, Defendant Chris Zheng (hereinafter, Defendant "Zheng") has ownership interest in the Corporate Defendants, and he was/is the CEO of the SpeedX enterprise.

67.     Upon information and belief, Defendant Zheng has the financial and operational control over Corporate Defendants, is a shareholder of Corporate Defendants, and has the authority to decide Corporate Defendants' employment policies and procedures.

68.     Plaintiffs were "employees" of Individual Defendants Ye, Jia, and Zheng within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

69.     Plaintiffs were "employees" of Corporate Defendants within the meaning of 29 U.S.C § 203 (e)(1) and NYLL § 190(2).

70.     Defendants Ye, Jia, Zheng, and Corporate Defendants controlled the work schedule, hours, the task assignments and the overall work associated with Plaintiffs work that they performed during their employment with Defendants.

71.     Defendants Ye, Jia, Zheng, and Corporate Defendants controlled the terms and conditions of Plaintiffs' employment and are thus "employers" within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3).

72.     Upon information and belief, Defendants have a total of at least a hundred and fifty (150) employees who work as couriers workers who are similarly situated with the plaintiffs.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

73.     Defendants operate a courier service business where the Plaintiffs worked as courier/delivery workers. At all relevant times, Individual Defendants Ye, Jia, and Zheng possess or possessed operational control over Corporate Defendants; possess or possessed an ownership interest in Corporate Defendants; and control or controlled significant functions of Corporate Defendants.

74.     At all times relevant hereto, Defendants acted as a single employer in general and a joint employer with respect to Plaintiffs, as Defendants held out Plaintiffs as employees of D&C EXPRESS SERVICE INC a/b/a SPEEDX, MAVERICK GROUP HOLDING LLC, and YBB TECHNOLOGY INC.

75.     Corporate Defendants employed the same employees, including Plaintiffs, performed work on the same job sites, and were all responsible for issuing Plaintiffs their wages.

76.     The Corporate Defendants functioned as a single integrated enterprise during Plaintiffs' employment by Defendants.

77.     Corporate Defendants and Individual Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

14

78.     At relevant times, Corporate Defendants possessed substantial control over Plaintiffs' and other similarly situated employees' working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

79.     Corporate Defendants employed Plaintiffs, and all similarly situated individuals, and is Plaintiffs' and all similarly situated individuals' employers within the meaning of 29 U.S.C. 201 et seq. and the NYLL.

80.     At all relevant times, Individual Defendants were Plaintiffs' employers within the meaning of the FLSA, NYLL and other law.

81.     Individual Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for Plaintiffs' services.

82.     Individual Defendants supervised Plaintiffs' work schedules and conditions of Plaintiffs' employment.

83.     Individual Defendants also determined the rate and method of payment for Plaintiffs and other similarly situated employees.

84.     Individual Defendants also controlled and guided limited recordkeeping that took place which Plaintiffs contends is deficient pursuant to FLSA and NYLL requirements. Specifically, Defendants did not track all hours Plaintiffs worked; instead, Defendants merely asked Plaintiffs to sign on a piece of paper on their workdays that set forth the delivery route and Plaintiffs' names.

***Plaintiff Litao Zhou ("Plaintiff Zhou")***

15

85.    Plaintiff Zhou was employed by Defendants as a courier from around June 2023 to September 2023, and then again from February 2, 2024, to October 24, 2024.

86.    Plaintiff Zhou was interviewed by Defendant Ye and was offered a job by Defendant Ye. Subsequently, Defendants Ye and Jia set Plaintiff Zhou's work schedule and supervised his work during his employment with Defendants.

87.    Specifically, Defendants required Plaintiff Zhou to work seven (7) days per week. On Plaintiff Zhou's workdays, he was required to come to the warehouse to load the parcels to his car at around 4:30AM and then started to deliver the parcels from around 5AM until 5PM without a designated uninterrupted meal break.

88.    Therefore, Plaintiff Zhou worked approximately Eighty-Seven and a half (87.l5) hours per week at least.

89.    Throughout Plaintiff Zhou's entire employment period with Defendants, Defendants paid him $1.8 for each delivery order he completed. Defendants failed to pay Plaintiff Zhou an hourly rate for all the hours he worked.

90.    Additionally, Defendants failed to pay Plaintiff Zhou overtime compensation equals to one and one-half times his regular hourly rate, for all hours he worked over forty (40) hours per week.

91.    Defendants paid Plaintiff Zhou in checks at the beginning of his employment. However, checks Plaintiff Zhou received from Defendants constantly bounced, causing delay to the wage payments that Plaintiff Zhou was entitled to. In or around July 2024, Defendants started to pay Plaintiff Zhou cash instead.

92.     Defendants Maverick Group Holding LLC and YBB Technology Inc appeared on multiple checks Plaintiff Zhou received from Defendants appearing to be the entities that issued the paychecks to Plaintiff Zhou.

93.     Throughout Plaintiff Zhou's employment at Defendants' courier business, Defendants constantly delayed paying Plaintiff Zhou. Even though Plaintiff Zhou made multiple attempts to follow up with Defendants on the delayed wage payments, Defendants willfully, intentionally, and knowingly disregarded Plaintiff Zhou's inquiry.

94.     Plaintiff Zhou eventually had to stop working for Defendants due to the late payment and nonpayment of his wages.

95.     Defendants committed the above-alleged acts knowingly, intentionally and willfully.

96.     Upon information and belief, it is Defendants' common and repetitive practice that Defendants only paid Plaintiff Zhou and the similarly situated courier workers a fixed rate per delivery order while failing to pay them an hourly rate for all the hours they worked. Moreover, Defendants failed to make wage payments in a timely manner while requesting Plaintiff Zhou and the similarly situated courier workers to work an extremely intense schedule.Defendants knew that the nonpayment of wages would economically injure Plaintiffs and the Collective Action members and violated federal and state laws.

97.     Upon information and belief, Defendants have or have at least a hundred and fifty (150) courier employees working for their New York Branch Offices/Warehouses.

98.     During Plaintiff Zhou's employment, he specifically worked for Defendants' New York Branch Offices/Warehouses and delivered parcels mostly within Queens County, New York.

17

Defendants assigned Route Nos. 14 and 81 to Plaintiff Zhou, which covered multiple areas within Queens County, and Plaintiff Zhou was required to deliver parcels to these areas.

99.     Defendants did not pay Plaintiff Zhou one additional hour of pay at the basic minimum wage rate for each day that Plaintiff Zhou's spread of hours exceeded ten hours.

100.     Plaintiff Zhou is non-exempt under FLSA and NYLL. Among other things, Plaintiff Zhou did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Zhou's employment for Defendants was physical labor.

101.     Plaintiff Zhou regularly handled goods in interstate commerce, such as handling customers' packages/items and other business inventory that were manufactured or produced outside of the State of New York.

102.     Plaintiff Zhou's work duties required neither discretion nor independent judgment. He had to follow Defendants Ye and Jia's instructions and work under their supervision to complete the work assignments.

103.     At all relevant times hereto, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Zhou's and all other similarly situated individuals' lawfully earned wages.

104.     Defendants unlawfully withheld a portion of Plaintiff Zhou's wages and other similarly situated courier employees' portion of wages.

105.     Plaintiff Zhou was not able to hire or fire for Defendants, nor to recommend hiring or firing. Further, Plaintiff Zhou did not supervise any of Defendants' employees at any time during his employment at Defendants' courier business.

106.     Defendants willfully, knowingly, and intentionally committed the foregoing acts against Plaintiff Zhou and the Collective Action Members.

***Plaintiff Yun Chi ("Plaintiff Chi")***

107. Plaintiff Chi was employed by Defendants as a courier from around February 2024 to October 2024.

108. Plaintiff Chi was interviewed by Defendant Ye and was offered a job by Defendant Ye. Subsequently, Defendants Ye and Jia set Plaintiff Chi's work schedule and supervised his work during his employment with Defendants.

109. Specifically, Defendants required Plaintiff Chi to work seven (7) days per week. On Plaintiff Chi's workdays, he was required to come to the warehouse to load the parcels to his car at around 3:30AM or 4AM and then started to deliver the parcels until around 8PM or sometimes even 1:30AM without a designated uninterrupted meal break. Following Defendants assigned work schedule, Plaintiff Chi worked at least sixteen (16) hours per workday.

110. Therefore, Plaintiff Chi worked at least a hundred and twelve (120) hours weekly.

111. Regarding the wage payment, Defendants only paid Plaintiff Chi $2.1 or $2.3 for each delivery order he completed- if the parcels' recipient are not in the areas specifically covered by the numbered routes. However, the rate per order later went down to $1.8.

112. Defendants failed to pay Plaintiff Chi an hourly rate for all the hours he worked.

113. Additionally, Defendants failed to pay Plaintiff Chi overtime compensation equals to one and one-half times his regular rate of pay, for all hours he worked over forty (40) hours per week.

114. Defendants paid Plaintiff Chi in checks at the beginning of his employment. However, checks Plaintiff Chi received from Defendants constantly bounced, causing delay to the wage payments that Plaintiff Chi was entitled to. In around July 2024, Defendants started to pay

Plaintiff cash instead, but Defendants always deducted 8% from the cash before paying Plaintiff Chi.

115. Throughout Plaintiff Chi's employment at Defendants' courier business, Defendants constantly delayed paying Plaintiff Chi or miscalculated his wages. Even though Defendants promised to pay Plaintiff Chi on a bi-weekly basis, the wage payments were never received on time.

116. As Plaintiff Chi always received wage payments less than what he was entitled to receive and due to the delay of the wage payments, Plaintiff Chi complained to Defendant Ye. Ever since Plaintiff made complaints to Defendant Ye, Defendant started to retaliate against Plaintiff Chi. For example, Defendant would assign wrong routes to Plaintiff Chi which made it difficult for Plaintiff Chi to complete delivery.

117. In or around October 2024, Defendants fired Plaintiff Chi right after Plaintiff Chi came back from his time off. Defendants also assigned the routes Plaintiff Chi was originally responsible for to other courier workers.

118. Defendants committed the above-alleged acts knowingly, intentionally and willfully.

119. Upon information and belief, it is Defendants' common and repetitive practice that Defendants only paid Plaintiff Chi and the similarly situated courier workers a fixed rate per delivery order while failing to pay them an hourly rate for all the hours they worked. Moreover, Defendants failed to make wage payments in a timely manner while requesting Plaintiff Chi and the similarly situated courier workers to work an extremely intense schedule.

120. Defendants knew that the nonpayment of wages would economically injure Plaintiffs and the Collective Action members and violated federal and state laws.

121. During Plaintiff Chi's employment, he specifically worked for Defendants' New York Branch Offices/Warehouses and delivered parcels mostly within King County or the Bronx, New York.

122. Defendants did not pay Plaintiff Chi one additional hour of pay at the basic minimum wage rate for each day that Plaintiff Chi's spread of hours exceeded ten hours.

123. Plaintiff Chi is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Chi did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Chi's employment for Defendants was physical labor.

124. Plaintiff Chi regularly handled goods in interstate commerce, such as handling customers' packages/items and other business inventory that were manufactured or produced outside of the State of New York.

125. Plaintiff Chi's work duties required neither discretion nor independent judgment. He had to follow Defendants Ye and Jia's instructions and work under their supervision to complete the work assignments.

126. At all relevant times hereto, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Chi's and all other similarly situated individuals' lawfully earned wages.

127. Defendants unlawfully withheld a portion of Plaintiff Chi's wages and other similarly situated courier employees' portion of wages.

128. Plaintiff Chi was not able to hire or fire for Defendants, nor to recommend hiring or firing. Further, Plaintiff Chi did not supervise any of Defendants' employees at any time during his employment at Defendants' courier business.

129.    Defendants willfully, knowingly, and intentionally committed the foregoing acts against Plaintiff Chi and the Collective Action Members.

### *Plaintiff Weishan Wu ("Plaintiff Wu")*

130.    Plaintiff Wu was employed by Defendants as a courier from around September 2023 to January 2025.

131.    Plaintiff Wu was interviewed by Defendant Ye and was offered a job by Defendant Chi. Subsequently, Defendants Ye and Jia set Plaintiff Wu's work schedule and supervised his work during his employment with Defendants.

132.    Specifically, Defendants require Plaintiff Wu to work seven (7) days per week. On Plaintiff Wu's workdays, he was required to come to the warehouse to load the parcels to his car at around 4:30AM and then started to deliver the parcels from 5AM until around 8PM or sometimes even 11:30PM without a designated uninterrupted meal break. Following Defendants assigned work schedule, Plaintiff Wu worked at least fifteen hours and a half (15.5) per workday. Therefore, Plaintiff Wu worked at least a hundred and eight hours and a half (108.5) hours weekly.

133.    Regarding the wage payment, Defendants paid Plaintiff Wu $2.5 for each parcel he delivered to the Bronx area, $2.3 for each parcel delivered to Manhattan, and $2 for each parcel he delivered to Brooklyn. Defendants failed to pay Plaintiff Wu an hourly rate for all the hours he worked.

134.    Additionally, Defendants failed to pay Plaintiff Wu overtime compensation equals to one and one-half times his regular rate of pay, for all hours he worked over forty (40) hours per week.

135.    Defendants paid Plaintiff Wu in checks at the beginning of his employment for about three or four months and then started to pay Plaintiff cash instead.

136.    Throughout Plaintiff Wu's employment at Defendants' courier business, Defendants constantly delayed paying Plaintiff Wu or even failed to pay him anything for three months of work.

137.    Due to the delayed wage payments and the nonpayment of his wages, Plaintiff Wu complained to Defendants and made multiple attempts to follow up on the payment. However, Defendants disregarded Plaintiff Wu's request and inquiries. In retaliation to Plaintiff Wu's complaints, Defendants fired Plaintiff Wu at the beginning of 2025 around January.

138.    Defendants committed the above-alleged acts knowingly, intentionally and willfully.

139.    Upon information and belief, it is Defendants' common and repetitive practice that Defendants only paid Plaintiff Wu and the similarly situated courier workers a fixed rate per delivery order while failing to pay them an hourly rate for all the hours they worked. Moreover, Defendants failed to make wage payments in a timely manner while requesting Plaintiff Wu and the similarly situated courier workers to work an extremely intense schedule.

140.    Defendants knew that the nonpayment of wages would economically injure Plaintiffs and the Collective Action members and violated federal and state laws.

141.    During Plaintiff Wu's employment, he specifically worked for Defendants' New York Branch Offices/Warehouses and delivered parcels mostly within the Bronx, Manhattan, and Brooklyn.

142.    Defendants did not pay Plaintiff Chi one additional hour of pay at the basic minimum wage rate for each day that Plaintiff Chi's spread of hours exceeded ten hours.

143. Plaintiff Wu is non-exempt under FLSA and the NYLL. Among other things, Plaintiff Wu did not occupy what law would characterize as a "professional," "executive" or even "administrative" position, as Plaintiff Wu's employment for Defendants was physical labor.

144. Plaintiff Wu regularly handled goods in interstate commerce, such as handling customers' packages/items and other business inventory that were manufactured or produced outside of the State of New York.

145. Plaintiff Wu's work duties required neither discretion nor independent judgment. He had to follow Defendants Ye and Jia's instructions and work under their supervision to complete the work assignments.

146. At all relevant times hereto, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Wu's and all other similarly situated individuals' lawfully earned wages.

147. Defendants unlawfully withheld a portion of Plaintiff Wu's wages and other similarly situated courier employees' portion of wages.

148. Plaintiff Wu was not able to hire or fire for Defendants, nor to recommend hiring or firing. Further, Plaintiff Wu did not supervise any of Defendants' employees at any time during his employment at Defendants' courier business.

149. Defendants willfully, knowingly, and intentionally committed the foregoing acts against Plaintiff Wu and the Collective Action Members.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

150. Plaintiffs bring the claims, Count I, as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all courier service employees employed by Defendants D&C EXPRESS SERVICE INC d/b/a SPEEDX, SPEED XPRESS INC, MAVERICK GROUP

24

HOLDING LLC, and YBB TECHNOLOGY INC., on or after the date that is three years before filing of the Complaint in this case as defined herein (the "Collective Action Members").

151.    At all relevant times, Plaintiffs and the other Collective Action Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendants' decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully retaining their earned wages. The claims of Plaintiffs stated herein are essentially the same as those of the other Collective Action Members.

152.    Count I of Plaintiffs' claims are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The Collective Action Members are readily ascertainable. For the purpose of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to the Collective Action Members via first class mail to the last address known to Defendants.

## STATEMENT OF CLAIM

### COUNT I
**[Violations of the Fair Labor Standards Act—Overtime Wage
Brought on behalf of the Plaintiffs and the FLSA Collective]**

153.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

154.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half

times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC § 207(a).

155.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC § 216(b).

156.    Defendants have failed to pay Plaintiffs' overtime wages to which they are entitled under the FLSA at the rate of time and one-half for all hours worked in excess of forty (40) hours per week.

157.    Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint were unlawful.

158.    Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs'.

159.    Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. §§ 201 *et seq.*

160.    As a result of Defendants' willful violations of the FLSA, Plaintiffs have suffered damages by Defendants' failure to pay overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**COUNT II**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiffs]**

26

161.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

162.    Defendants have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

163.    Defendants have failed to pay Plaintiffs premium overtime wages due and owing under the NYLL and the supporting New York State Department of Labor Regulations at the rate of time and one half for all hours worked in excess of forty (40) hours per week.

164.    Through their knowing or intentional failure to pay minimum hourly wages to Plaintiffs, Defendants have willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

165.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover from Defendants unpaid overtime wages and liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## COUNT III
**[Violation of New York Labor Law—Spread of Hour Pay**
**Brought on behalf of Plaintiffs]**

166.    Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

167.    Defendants regularly and knowingly required Plaintiffs to work for a spread of hours equal to, or greater than, ten (10) hours per day.

168.    Defendants knowingly, willfully, and intentionally failed to pay Plaintiffs one extra hour's pay at the basic minimum wage for every day in which the interval between Plaintiffs' start and end times exceeded ten hours, in violation of New York State labor regulations. N.Y. Comp. Codes R. & Regs. tit. 12, §§ 142-2.4.

27

169.    Because of Defendants' willful violation of the NYLL, Plaintiffs are entitled to recover from Defendants, jointly and severally, his unpaid wages originating from the spread of hours provision, liquidated damages, as well as reasonable attorneys' fees and costs of the action, including pre-judgment interest, all in an amount to be determined at trial.

**COUNT IV**
**[Violation of New York Labor Law—Wage Notices**
**Brought on behalf of Plaintiffs]**

170.    Plaintiff re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

171.    Defendants have willfully failed to supply Plaintiffs with a wage notices, as required by NYLL, Article 6, § 195(1),  in English, or in the language identified by Plaintiffs as their primary language, containing Plaintiffs' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191;  the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner has deemed material and necessary.

172.    Through their knowing or intentional failure to provide Plaintiffs with the wage notices required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

173.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## COUNT V
### [Violation of New York Labor Law—Wage Statements
### Brought on behalf of Plaintiff]

174.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

175.    Defendants have willfully failed to supply Plaintiffs with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

176.    Through their knowing or intentional failure to provide Plaintiffs with the accurate wage statements required by the NYLL, Defendants have willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

177.    Due to Defendants' violation of NYLL § 195(3), Plaintiffs are entitled to recover from the Defendants liquidated damages of $5,000, plus reasonable attorney's fees, and costs and disbursements of the action, pursuant to the NYLL § 198-1(d).

## COUNT VI
### [Violation of The New York Labor Law NYLL Section 215
### Retaliation: Brought on behalf of Plaintiffs Chi and Wu]

178.    Plaintiff Chi repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

179.    NYLL § 215 prohibits an employer from terminating or disciplining an employee because "such employee has made a complaint to his or her employer, or to the commissioner or

his or her authorized representative, or to the attorney general or any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter."

180.    While working for Defendants, Plaintiff Chi complained to Defendants about the wages he received through Defendant Ye, that he was not timely and correctly paid.

181.    However, not only did Defendants fail to address the issues, Defendants continued to fail to pay Plaintiff Chi properly and started to make it difficult for Plaintiff Chi to complete his work. For example, Defendants assigned wrong routes to Plaintiff Chi making him unable to complete the delivery of the parcels, and subsequently assigned Plaintiff Chi's routes to other courier workers. Defendants terminated Plaintiff Chi after Plaintiff Chi came back from his day off.

182.    Throughout Plaintiff Wu's employment at Defendants' courier business, Defendants constantly delayed paying Plaintiff Wu or even failed to pay him anything for three months of work.

183.    Due to the delayed wage payments and the nonpayment of his wages, Plaintiff Wu complained to Defendants and made multiple attempts to follow up on the payment. However, Defendants disregarded Plaintiff Wu's request and inquiries. In retaliation to Plaintiff Wu's complaints, Defendants fired Plaintiff Wu at the beginning of 2025 around January.

184.    In committing the above-mentioned retaliatory acts, Defendants discharged Plaintiffs Chi and Wu and retaliated against them for making such complaints about Defendants' violation of the NYLL as Plaintiffs Chi and Wu did not receive correct compensation for the work they performed.

185.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs Chi and Wu sustained damages and seek recovery for retaliation in an amount to be determined at trial, attorneys' fees, costs, liquidated damages and prejudgment interest as provided by NYLL § 215 and supporting regulations, and such other legal and equitable relief as this Court deems just and proper.

**COUNT VII**
**[Violation of the Fair Labor Standards Act —**
**Failure Reimburse for Expenses relating to Tools of the Trade]**

186.    Plaintiffs on behalf of themselves and all other similarly situated Collective Action Members and members of the Class repeats and re-alleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

187.    At all relevant times, the Defendants had a policy and practice of refusing to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs in order to make parcels/packages/parcels deliveries for Defendants' courier business.

188.    Upon information and belief, at all relevant times, Defendants required Plaintiffs to use their own vehicles to load and deliver the parcels/packages/items.

189.    Defendants failed to pay Plaintiffs for expenses incurred in relation to tools of the trade, which includes but is not limited to the cost of maintaining and repairing the vehicles due to its constant use for the Defendants' courier business and the expenses for gas and repair.

190.    Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to reimburse Plaintiffs for expenses incurred in relation to tools of the trade used by Plaintiffs when Defendants knew or should have known such was due.

**Prayer for Relief**

WHEREFORE, Plaintiffs request that this Court enter a judgment:

31

a)      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under Fair Labor Standards Act, and its supporting regulations, and the New York Labor Law, Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

b)      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c)      Designation of Plaintiffs as a Representatives of the Collective Action Members;

d)      An order declaring that the Defendants violated the FLSA;

e)      An order declaring that the Defendants violations of the FLSA were willful;

f)      An order declaring that the Defendants violated the NYLL;

g)      An order declaring that the Defendants' violations of the NYLL were willful;

h)      An award of spread of hours premium under the NYLL;'

i)      An award of damages pursuant to New York Labor Law §§ 195(1), (3), and 198;

j)      An award of Plaintiffs' compensatory damages, including all unpaid wages owed and unlawfully deducted in an amount according to proof;

k)      An award of unpaid expenses relating to tools of the trade due under the FLSA;

l)      An award of Plaintiffs' compensatory damages that Plaintiffs have sustained as a result of the Defendants' unlawful retaliatory conduct, including back pay, front pay, damages to compensate Plaintiffs for harm to his reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that he would

have received but for the Defendants' conduct, and any other out of- pocket losses that Plaintiffs have incurred or will incur;

m)      An award of Plaintiffs' liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA and the NYLL;

n)      An award of Plaintiffs' pre-judgment and post-judgment interest under the FLSA and the NYLL;

o)      Granting an injunction requiring Defendants to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

p)      An award of Plaintiffs' reasonable attorneys fees' and costs pursuant the FLSA and the NYLL; and,

q)      Such other and further relief as the Court deems just and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated:  Flushing, New York
       May 27, 2025

**SEO LAW GROUP, PLLC**

By: */s/Jiaxin Na*
Jiaxin Na, Esq.
136-68 Roosevelt Ave., Suite 726
Flushing, New York 11354
Telephone: (718) 500-3340
Email: jiaxin@seolawgroup.com
*Attorneys for Plaintiffs*

33

**<u>DEMAND TO PRESERVE EVIDENCE</u>**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiffs' employment, to Plaintiffs' causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

Dated: June 6, 2025